**F I L E D**
IN THE 13TH COURT OF APPEALS
CORPUS CHRISTI

5/26/15

**DORIAN E. RAMIREZ, CLERK**
**BY** DTello

ACCEPTED
13-14-683-CR
THIRTEENTH COURT OF APPEALS
CORPUS CHRISTI, TEXAS
5/26/2015 1:53:40 PM
DORIAN RAMIREZ
CLERK

No. 13-14-683-CR

IN THE THIRTEENTH COURT OF APPEALS
CORPUS CHRISTI AND EDINBURG, TEXAS

RECEIVED IN
13th COURT OF APPEALS
CORPUS CHRISTI/EDINBURG, TEXAS

5/26/2015 1:53:40 PM
DORIAN E. RAMIREZ
Clerk

**CHRISTOPHER SIEBERT, Appellant**

**vs.**

**STATE OF TEXAS, Appellee**

Appeal from Cause No. 14-CR-0055-C in the 94th Judicial District Court, Nueces County, Texas, the Hon. Bobby Galvan presiding

## APPELLANT'S BRIEF

Respectfully submitted by:

Donald B. Edwards
State Bar No. 06469050
Law Office of Donald B. Edwards
P.O. Box 3302
Corpus Christi, TX 78463-3302
(361) 887-7007
(361) 887-7009 (fax)

**Appellant requests oral argument**

## List of Parties

**Appellant**

Christopher Siebert
TDCJ# 01960898
Garza West Unit
4250 S HWY. 202
Beeville, TX 78102

**Appellant's Trial Counsel**

Mr. Gabriel Salais
410 People's St.
Corpus Christi, TX 78401

Veronica Garza (withdrew)
500 N. Water St., Ste. 601
Corpus Christi, TX 78401

**Appellant's Appellate Counsel**

Mr. Donald B. Edwards
Law Office of Donald B. Edwards
P.O. Box 3302
Corpus Christi, TX 78463-3302

**Appellee State of Texas Trial and Appellate Counsel**

Ms. Elizabeth Schmidt (trial)
Mr. Matthew Manning (trial)
Mr. Doug Norman (appellate)
Asst. Nueces County District Attorneys
901 Leopard St.
Corpus Christi, TX 78401

# Table of Contents

List of Parties.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Table of Contents. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Index of Authorities.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Statement of the Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Issues Presented.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Statement of Facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
    Underlying facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
    Procedural history. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Summary of the Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
    I. The evidence is insufficient to support the conviction.. . . . . . . . . . . . . 16
        A. Standard of review. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
        B. The charged offense. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
        C. The evidence is insufficient to support inference of guilt. . . . . . 21
    II. The trial court committed egregriously harmful error by charging the jury concerning a conduct element that is not an element of the offense, thus expanding the definition of the offense beyond that set out in the statute and permitting a finding of guilt based on inoffensive conduct.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
        *A. Conduct elements in general*.. . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
        B. Such error constitutes egregious error.. . . . . . . . . . . . . . . . . . . . . 23
    III. Trial counsel was ineffective for failing to object to the charge and to prosecutorial misstatement of the law in closing argument.. . . . . . . 24
        A. Standards regarding counsel ineffectiveness claims. . . . . . . . . . 24
        B. Application. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Prayer.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

Certificate of Compliance and Service. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

# Index of Authorities

**Cases**

*Almanza v. State*, 686 S.W.2d 157 (Tex.Crim.App. 1985). . . . . . . . . . . . . . . . . . . 23, 24

*Barfield v. State*, 63 S.W.3d 446 (Tex. Crim. App. 2001). . . . . . . . . . . . . . . . . . 17

*Bruno v. State*, 845 S.W.2d 910 (Tex. Crim. App. 1993). . . . . . . . . . . . . . . . . . . 20

*Clayton v. State*, 235 S.W.3d 772 (Tex. Crim. App. 2007). . . . . . . . . . . . . . . . . 17

*Cook v. State*, 884 S.W.2d 485 (Tex. Crim. App. 1994) .. . . . . . . . . . . . . . . . . . . 22

*Ellison v. State*, 86 S.W.3d 226 (Tex. Crim. App. 2002).. . . . . . . . . . . . . . . . . . . 23

*Ex parte Brown*, 205 S.W.3d 538 (Tex. Crim. App. 2006). . . . . . . . . . . . . . . . . . 26

*Hart v. State*, 89 S.W.3d 61 (Tex. Crim. App. 2002). . . . . . . . . . . . . . . . . . . . . . 18

*Hernandez v. State*, 819 S.W.2d 806 (Tex. Crim. App. 1991). . . . . . . . . . . . . . . 18

*Hooper v. State*, 214 S.W.3d 9 (Tex. Crim. App. 2007). . . . . . . . . . . . . . . . . . 16, 18

*Jackson v. Virginia*, 443 U.S. 307 (1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

*Jefferson v. State*, 189 S.W.3d 305 (Tex. Crim. App. 2006) . . . . . . . . . . . . . . . . 23

*King v. State*, 895 S.W.2d 701 (Tex. Crim. App. 1995). . . . . . . . . . . . . . . . . . . . 16

*Lane v. State*, 763 S.W.2d 785 (Tex. Crim. App. 1989). . . . . . . . . . . . . . . . . . . . 19

*Lopez v. State*, 343 S.W.3d 137 (Tex. Crim. App. 2011) . . . . . . . . . . . . . . . . . . . 24

*Malik v. State*, 953 S.W.2d 234 (Tex.Crim.App. 1997). . . . . . . . . . . . . . . . . . . . 17

*Martinez v. State*, 313 S.W.3d 358 (Tex. App.-Houston [1st Dist.] 2009, pet. ref'd). . . . 25

*McGee v. State*, 774 S.W.2d 229 (Tex. Crim. App. 1989).. . . . . . . . . . . . . . . . . . . . 19

*McGinn v. State*, 961 S.W.2d 161 (Tex. Crim. App. 1998). . . . . . . . . . . . . . . . . 26

*McMann v. Richardson*, 397 U.S. 759, 90 S. Ct. 1441, 1449 (1970). . . . . . . . . . . . . . 24

*McQueen v. State*, 781 S.W.2d 600 (Tex.Crim.App. 1989). . . . . . . . . . . . . . . . 20

*Mosley v. State*, 983 S.W.2d 249 (Tex. Crim. App. 1998). . . . . . . . . . . . . . . . 16

*Phillips v. State*, 130 S.W.3d 343 (Tex. App.-Houston [14th Dist.] 2004), *aff'd*, 193 S.W.3d 904 (Tex. Crim. App. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

*Powell v. Alabama*, 287 U.S. 45, 53 S. Ct. 55 (1932). . . . . . . . . . . . . . . . . . . . . . 25

*Powell v. State*, 194 S.W.3d 503 (Tex. Crim. App. 2006). . . . . . . . . . . . . . . . 18

*Randon v. State*, 178 S.W.3d 95 (Tex. App.-Houston [1st Dist.] 2005, no pet.). . . . . . . 26

*Robertson v. State*, 187 S.W.3d 475 (Tex. Crim. App. 2006). . . . . . . . . . . . . . . . . . 25

*Robertson v. State*, 871 S.W.2d 701 (Tex. Crim. App. 1993). . . . . . . . . . . . . . . . . . 19

*Saunders v. State*, 817 S.W.2d 688 (Tex. Crim. App. 1991). . . . . . . . . . . . . . . . . . . 23

*Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 2064 (1984). . . . . . . . . . . . 25

*Thompson v. State*, 9 S.W.3d 808 (Tex. Crim. App. 1999). . . . . . . . . . . . . . . . . . . 25

*Threadgill v. State*, 146 S.W.3d 654 (Tex. Crim. App. 2004. . . . . . . . . . . . . . . 26

*Williams v. State*, 235 S.W.3d 742 (Tex. Crim. App. 2007).. . . . . . . . . . . . . . . 17

*Winfrey v. State*, 393 S.W.3d 763 (Tex. Crim. App. 2013). . . . . . . . . . . . . . . . 18

*Wood v. State*, 260 S.W.3d 146 (Tex. App.-Houston [1st Dist.] 2008, no pet.). . . . . . . 26

**Statutes**

TEX. PENAL CODE ANN. § 6.03(a), (b) (Vernon 2003). . . . . . . . . . . . . . . . . . . . . . . 22

TEX. PENAL CODE ANN. § 6.03(a), (b) (Vernon 2003). . . . . . . . . . . . . . . . . . . . . . . 22

TEX. PENAL CODE ANN. §31.07. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

## Statement of the Case

On September 30, 2014, a jury found Christopher Siebert guilty of unauthorized use of a vehicle. CR 69. Appellant elected for the court to assess punishment. CR 37. At a separate punishment hearing on October 17, 2014, Appellant pled "Not true" to allegations of prior convictions in California for felony burglary and felony possession of a controlled substance. RR Vol. 5, p. 5. On October 17, 2014, the court found the enhancements to be true and assessed punishment at 15 years confinement. CR 78. Appellant timely filed a notice of appeal on October 21, 2014. CR 81.

## Issues Presented

Whether the offense of unauthorized use of a vehicle has the mens rea attach to the circumstance of lack of effective consent, requiring the State to prove the defendant knew he did not have the owner's consent to use the vehicle.

Whether the evidence is sufficient to establish beyond a reasonable doubt whether the defendant had any awareness his use of the vehicle was without the effective consent of the owner.

Whether the trial court commits error by including "nature of the result" language in a jury charge for an offense that only has the conduct elements of nature

8

of conduct and nature of circumstances.

Whether it is incurably prejudicial for the State to argue to the jury that it only needed to find whether the defendant knowingly operated the vehicle and whether such operation was without the owner's effective consent.

Whether trial counsel was ineffective for failing to object to a charge that expanded the mens rea of the offense and for failing to object to the prejudicial jury argument by the State that mis-stated the elements of the offense.

**Statement of Facts**

*Underlying facts*

On January 2, 2014, Mary Saylor's husband suffered a heart attack and drove himself to the hospital, using her Ford Ranger. RR Vol. 4, p. 32. He was at that hospital for about 45 minutes before an ambulance took him to Spohn Shoreline. RR Vol. 4, p. 24, ll. 17-25. Mary Saylor was given all of her husband's clothes and belongings. RR Vol. 4, p. 24, ll. 1-6. She thinks she put his keys in the jacket, which she left in her Ford Ranger, but she never checked to see if they stayed there. RR Vol. 4, p. 25, ll. 15-25.

On January 4, 2014, Ms. Saylor went to Spohn Shoreline hospital to visit her husband in the morning and the evening. RR Vol. 4, p. 14. On the evening visit, she

took the jacket out of the Ranger to take to him in the hospital, and she thinks the keys might have fallen out then without her hearing them. RR Vol. 4, p. 20, ll. 1-15. When she returned to the parking garage in the evening, she discovered her Ford Ranger was gone. RR Vol. 4, p. 15, ll. 1-8. She went back into the hospital to report the theft of the vehicle. RR Vol. 4, p. 26, ll. 17-24. Hospital security called the police, but Ms. Saylor went home instead of waiting for the police to arrive. RR Vol. 4, p. 27, ll. 1-6. She never showed police the place where the vehicle had been parked and would have had to take them there but didn't. RR Vol. 4, p. 28, ll. 1-14. Hospital parking garage security camera video was never produced. RR Vol. 4, p. 22, ll. 9-14. Ms. Saylor could only testify she thought her husband's keys might have fallen out of his jacket when she was taking it to her husband. RR Vol. 4, p. 10, ll. 10-15.

On January 5, 2014, Joel Silva saw a man use something that didn't look like a key to enter a parked vehicle in a Corpus Christi HEB parking lot. RR Vol. 4, pp. 34-35. He saw the man take some tools from the vehicle and walk to a red Ford Ranger and drive away. RR Vol. 4, p. 35, ll. 2-9. He called the police and gave a description of the vehicle the man was driving, including a license plate number. RR Vol. 4, p. 36, ll. 2-12.

Officer Douglas May responded to the call and saw a red Ford Ranger with a

10

matching license plate leaving the HEB parking lot as he approached. RR Vol. 4, pp. 41-42. He followed the vehicle before pulling it over. RR Vol. 4, p. 42, ll. 10-23. He arrested the driver, who was Christopher Siebert. RR Vol. 4, p. 43, ll. 1-5; p. 47, ll. 22-25. Officer May did not recall any damage to the vehicle door or locks. RR Vol. 4, p. 55, ll. 5-6. He did recall noting the vehicle had the key in the ignition. RR Vol. 4, p. 59, ll. 3-17. This was an important fact for him to note for purposes of letting investigators know the car had not been jacked or hotwired. RR Vol. 4, p. 60, ll. 1-7. Since a person was found operating the vehicle that had been reported stolen, police made no effort to determine if anyone else had used the vehicle in the last 18 hours or how it was taken from the Spohn Shoreline parking garage. RR Vol. 4, p. 56, ll. 4-18. The Ford Ranger contained s tools that had been taken from the vehicle in the HEB parking lot, but it had nothing like a slim jim to force entry into other vehicles. RR Vol. 4, p. 54, ll. 1-18.

Mr. Siebert was arrested and transported downtown. The vehicle and its contents were inventoried, but the inventory was not produced at trial. RR Vol. 4, p. 59-60.

*Procedural history*

A grand jury indicted Mr. Siebert on March 13, 2014, for unauthorized use of

11

a vehicle. CR 5. On May 29, 2014, the State filed a notice of intent to enhance punishment with two prior felony convictions from California. CR 9. Original trial counsel Veronica Garza filed a Motion to Withdraw, and the trial court on July 10, 2014, appointed Gabriel Salais to represent Appellant. CR 18, 22. On September 8, 2014, the State filed a second notice of extraneous offenses that may be offered at trial. CR 32-33.

On September 9, 2014, a jury was chosen, and Appellant elected for the court to assess punishment. CR 37, 41. During jury argument, the State argued:

> We have to prove that he intentionally or knowingly operated a motor vehicle. We don't have to prove that he intentionally or knowingly stole the motor vehicle.

RR Vol. 4, p. 84, ll. 14-17. The State then said it had to prove the owner's lack of consent. RR Vol. 4, p. 85, ll. 9-13. The State then repeated its assertion that it only needed to show knowing and intentional operation:

> We have to put prove that the Defendant, on this date in Nueces County, Texas, intentionally or knowingly operated -- not stole, not took. We only have to prove operation and you saw it with your own eyes that he was intentionally operating that vehicle, okay? So I don't want you to be confused by what this case is not. What this case is not is a referendum on the police department's forensic policy, right? This case is not a conversation about whether the detective could have done more, whether he did less than he should of. It's none of those things. This case is whether Christopher Siebert had the effective consent of Mary Saylor and she told you unequivocally

12

> on that witness stand, what, that she didn't give him effective consent, okay?
> And by logical extension, effective consent is what? It's consent that's given by a person that's legally authorized to act for someone. Did you hear in the evidence that a person legally authorized to act for the owner gave consent? No, you didn't. So what this case is not is a case where there's effective consent, because the one person who couldn't give the consent told you with her own mouth that she did not give that consent.

RR Vol. 4, pp. 85-86.

The State continued with several other references to Appellant knowingly operating the vehicle and to Ms. Saylor not giving consent, but each time omitted to refer to any evidence that would even tend to show Appellant had any awareness of the lack of Ms. Saylor's consent. RR Vol. 4, pp. 87-88.

Defense counsel did not object to the State's highly misleading argument that directed the jury to convict without finding Appellant knew there was no effective consent to use the vehicle. However, Defense counsel did argue there was no evidence showing he knowingly or intentionally did it without the owner's effective consent. RR Vol. 4, p. 92, ll. 13-22. The State responded with another argument that it only had to show knowing and intentional operation of the vehicle by the defendant. RR Vol. 4, p. 93, ll. 18-25.

The jury found Appellant guilty. CR 69. The court recessed for a PSI, held a

separate punishment hearing, found the enhancements to be true, and sentenced Appellant to 15 years confinement. CR 78.

## Summary of the Argument

The evidence to support a criminal conviction must be such that a rational trier of fact can find all elements beyond a reasonable doubt.

Unauthorized use of a vehicle has two conduct elements–nature of the conduct (operating a vehicle) and nature of the circumstances (lack of effective consent of the owner). The mens rea (knowingly or intentionally) attaches to both conduct elements.

Knowledge and intent may be inferred from the circumstances, but there must be some evidence from which a jury can rationally infer knowledge or intent. Unexplained possession of stolen property alone is insufficient to support a finding of knowledge of the theft. There was nothing about the vehicle that demonstrated to an objective observer that it had been stolen or was being used without the true owner's permission. A rational jury could not conclude beyond a reasonable doubt that Appellant knew he did not have the effective consent of the owner.

A court egregiously errs when it includes mens rea elements in the charge that are not part of the offense. Adding an instruction on the "nature of the result" to a charge of a non-result oriented offense was a misdirection on the law that was likely

14

to injure the defendant's rights by expanding in the jury's mind the range of facts that would permit a verdict of guilty.

The State commits prejudicial jury argument when it mis-states the elements of the offense to make one element disappear. In this case, the State argued at length that it only had to show knowing operation of the vehicle without reference to whether the defendant had knowledge the use was without effective consent.

It is below the standard of professional care to permit a jury to be charged regarding knowing the nature of the result of conduct in a case that is not a result oriented offense and to permit the State to argue a definition of the offense that omits a necessary element of the offense. Defense counsel recognized the key issue in the case was whether there was evidence from which the jury could infer Appellant had knowledge or awareness that the vehicle was being used without the owner's consent. There can be no reasonable trial strategy to justify allowing the jury to have a charge that confuses the mens rea elements and allowing the State to argue the jury does not have to find Appellant was aware the vehicle was being used without the owner's consent. The prejudicial effect of the improper charge and jury argument was such that confidence in the outcome of the trial is undermined.

**Argument**

## I. The evidence is insufficient to support the conviction.

### A. Standard of review

When deciding whether evidence is sufficient to support a conviction, a reviewing court must assess all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could find the essential elements of the crime as charged in the indictment beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). This standard of review applies to cases involving both direct and circumstantial evidence. *King v. State*, 895 S.W.2d 701, 703 (Tex. Crim. App. 1995). Although the court of appeals is to consider all evidence presented at trial, it may not re-weigh the evidence and substitute its judgment for that of the jury. *King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000). The trier of fact is the exclusive judge of the credibility of witnesses and of the weight to be given their testimony, and it is the exclusive province of the trier of fact to reconcile conflicts in the evidence. *Mosley v. State*, 983 S.W.2d 249, 254 (Tex. Crim. App. 1998). Evidence is insufficient under this standard in four circumstances: (1) the record contains no evidence probative of an element of the offense; (2) the record contains a mere "modicum" of evidence probative of an element of the offense; (3) the evidence

16

conclusively establishes a reasonable doubt; and (4) the acts alleged do not constitute the criminal offense charged. *Jackson*, 443 U.S. at 314, 318 n. 11, 320, 99 S.Ct. at 2786, 2789 & n. 11; *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007)

The legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge for the case that would set out the law, be authorized by the indictment, not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describe the particular offense for which the defendant was tried. *Malik v. State*, 953 S.W.2d 234, 240 (Tex.Crim.App. 1997). This standard applies to both jury and bench trials. *Id*. However, the sufficiency of the evidence in a bench trial is measured by the evidence adduced at both guilt-innocence and punishment phases. *Barfield v. State*, 63 S.W.3d 446, 451 (Tex. Crim. App. 2001).

In viewing the record, direct and circumstantial evidence are treated equally; circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). In determining the sufficiency of the evidence, a reviewing court examines "whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Id*. (quoting

*Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007)).   Finally, the "cumulative force" of all the circumstantial evidence can be sufficient for a trier of fact to find the accused guilty beyond a reasonable doubt, even if every fact does not "point directly and independently to the guilt of the accused."  *See Powell v. State*, 194 S.W.3d 503, 507 (Tex. Crim. App. 2006).  However, the trier of fact's decision must be rational and thus cannot be upheld if it relies on evidence of physical impossibilities or speculation.

Knowledge may be inferred from the acts, words, and conduct of the accused and from the circumstances in which the prohibited act occurred.  *Hernandez v. State*, 819 S.W.2d 806, 809-10 (Tex. Crim. App. 1991); *Hart v. State*, 89 S.W.3d 61, 64 (Tex. Crim. App. 2002).

> Circumstantial evidence is as probative as direct evidence in establishing guilt, and circumstantial evidence alone can be sufficient to establish guilt.  *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). While juries are permitted to draw multiple reasonable inferences as long as each inference is supported by the evidence presented at trial, "juries are not permitted to come to conclusions based on mere speculation or factually unsupported inferences or presumptions."  Id. at 15.  "[A]n inference is a conclusion reached by considering other facts and deducing a logical consequence from them," while "[s]peculation is mere theorizing or guessing about the possible meaning of facts and evidence presented."  Id. at 16.  "A conclusion reached by speculation . . . is not sufficiently based on facts or evidence to support a finding beyond a reasonable doubt."  Id.

*Winfrey v. State*, 393 S.W.3d 763, 771 (Tex. Crim. App. 2013).

Intent may be inferred from the actions or conduct of appellant. *Robertson v. State*, 871 S.W.2d 701, 705 (Tex. Crim. App. 1993); *McGee v. State*, 774 S.W.2d 229, 234 (Tex. Crim. App. 1989). Establishment of culpable mental states is almost invariably grounded upon inferences to be drawn by the factfinder from the attendant circumstances. *Lane v. State*, 763 S.W.2d 785, 787 (Tex. Crim. App. 1989). The threshold of proof necessary to support a jury finding of an awareness that such a result is reasonably certain to occur is concomitantly low. *Id.* Mental culpability is of such a nature that it generally must be inferred from the circumstances under which a prohibited act or omission occurs. *Hernandez v. State*, 819 S.W.2d 806, 810 (Tex. Crim. App. 1991).

The factfinder's ability to rely on inferences is not unlimited.

> Under the Jackson test, we permit juries to draw multiple reasonable inferences as long as each inference is supported by the evidence presented at trial. However, juries are not permitted to come to conclusions based on mere speculation or factually unsupported inferences or presumptions. To correctly apply the Jackson standard, it is vital that courts of appeals understand the difference between a reasonable inference supported by the evidence at trial, speculation, and a presumption. A presumption is a legal inference that a fact exists if the facts giving rise to the presumption are proven beyond a reasonable doubt. . . . In contrast, an inference is a conclusion reached by considering other facts and deducing a logical consequence from them. Speculation is mere theorizing or guessing about the possible meaning of facts and evidence presented. A conclusion reached by speculation may not be completely unreasonable, but it is not sufficiently based on facts or evidence to support a finding beyond a reasonable doubt.

19

As stated above, juries are permitted to draw multiple reasonable inferences from the evidence (direct or circumstantial), but they are not permitted to draw conclusions based on speculation . . .

*Hooper*, 214 S.W.3d at 15-16 (Tex. Crim. App. 2007) (citations and footnotes omitted).

### B. The charged offense

Appellant was charged with unauthorized use of a vehicle. CR 3.

(a) A person commits an offense if he intentionally or knowingly operates another's boat, airplane, or motor-propelled vehicle without the effective consent of the owner.

TEX. PENAL CODE ANN. §31.07. The offense of unauthorized use of a motor vehicle encompasses two conduct elements. *Bruno v. State*, 845 S.W.2d 910, 912 (Tex. Crim. App. 1993); *McQueen v. State*, 781 S.W.2d 600, 603 (Tex.Crim.App. 1989). The offense not only requires "forbidden conduct", but also knowledge of the "attendant circumstances" of the offense. *Bruno*, 845 S.W.2d at 912; *McQueen*, 781 S.W.2d at 604. The "forbidden conduct" is the knowing operation of the vehicle. *Bruno*, 845 S.W.2d at 912; *McQueen*, 781 S.W.2d at 604. In order to have knowledge of the "attendant circumstances", the defendant must be aware that the operation of the vehicle is without the owner's consent. *Bruno*, 845 S.W.2d at 912; *McQueen*, 781 S.W.2d at 604.

20

*C. The evidence is insufficient to support inference of guilt*

The State showed Ms. Saylor's vehicle was taken without her permission from the parking garage at Spohn Shoreline in the early evening of January 4, 2015. The State showed Appellant was found operating the vehicle in a different part of town in the afternoon of January 5, 2015. There was no evidence of a forced entry of the vehicle–no damage to the door, window, lock, or ignition. There was nothing visible to let an objective person conclude the vehicle had been taken without the owner's permission. The only factor to suggest Appellant might have had an awareness the use was without consent was the fact he was in possession of the vehicle.

Without anything to suggest to an objective occupier of the vehicle that it had been taken without the effective consent of the owner, the evidence is insufficient for a rational jury to find beyond a reasonable doubt that Appellant knew his operation of the vehicle was without the effective consent of the owner. Accordingly, the judgment should be reversed and an acquittal ordered.


**II. The trial court committed egregriously harmful error by charging the jury concerning a conduct element that is not an element of the offense, thus expanding the definition of the offense beyond that set out in the statute and permitting a finding of guilt based on inoffensive conduct.**

*A. Conduct elements in general*

The court of criminal appeals has recognized that section 6.03 of the penal code delineates three "conduct elements" that may be involved in an offense: (1) the nature of the conduct; (2) the result of the conduct; and (3) the circumstances surrounding the conduct. *McQueen v. State*, 781 S.W.2d 600, 603 (Tex. Crim. App. 1989); see TEX. PENAL CODE ANN. § 6.03(a), (b) (Vernon 2003). An offense may contain any one or more of these "conduct elements" that alone, or in combination form, the overall behavior that our legislature has intended to criminalize, and it is those essential "conduct elements" to which a culpable mental state must apply. *McQueen*, 781 S.W.2d at 603.

The court's charge included language allowing the mens rea to attach to 1) the result of the conduct, 2) the nature of the conduct, or 3) the circumstances surrounding the conduct. Therefore, the trial court erred because it did not limit the statutory definitions of "intentionally" or "knowingly" to the respective culpable mental state required for a nature of the conduct and nature of the circumstances offense. *See Cook v. State*, 884 S.W.2d 485, 491 (Tex. Crim. App. 1994) ("It is error for a trial judge to not limit the definitions of the culpable mental states as they relate to the conduct elements involved in the particular offense.").

The "result" of an offense is the injury to person or loss or damage to property

22

that defines assaultive or destructive offenses. *See, e.g., Jefferson v. State*, 189 S.W.3d 305, 312 (Tex. Crim. App. 2006) (gravamen of assaultive offenses is result of bodily injury). However, there is no such result conduct element in authorized use of a vehicle as any damage to the vehicle is irrelevant to whether the vehicle was knowingly used by a person who knows the owner did not give effective consent.

### B. Such error constitutes egregious error.

When, as in this case, an accused fails to object to the charge, "he will obtain a reversal only if the error is so egregious and created such harm that he `has not had a fair and impartial trial' — in short `egregious harm.'" *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App. 1985). The error must "`go to the very basis of the case,'" "deprive the accused of a `valuable right,'" or "`vitally affect his defensive theory.'" *Id.* at 172. The degree of harm, sufficiently serious to be called "egregious," is present whenever a reviewing court finds the case for conviction or punishment was actually made clearly and significantly more persuasive by the error. *Saunders v. State*, 817 S.W.2d 688, 692 (Tex. Crim. App. 1991). Egregious harm is a difficult standard to prove and must be determined on a case-by-case basis. *Ellison v. State*, 86 S.W.3d 226, 227 (Tex. Crim. App. 2002). The actual degree of harm is assayed in light of the entire jury charge, the state of the evidence, including the contested

23

issues and weight of probative evidence, the argument of counsel, and any other relevant information revealed by the record of the trial as a whole. *Almanza*, 686 S.W.2d at 171.

In this case, the vehicle was shown to have suffered damage to the under-carriage and a hole in the radiator. A jury could reasonably believe an operator of the vehicle had knowledge of damage caused to the vehicle during that operation and thus convict Appellant based on a belief that he knew his operation of the vehicle caused damage to the vehicle. However, causing damage to a vehicle is not a part of the elements of unauthorized use of a vehicle, so the instruction is a mis-direction of the law, requiring reversal. *See* TEX. R. APP. P. 21.3.

## III. Trial counsel was ineffective for failing to object to the charge and to prosecutorial misstatement of the law in closing argument.

### A. Standards regarding counsel ineffectiveness claims

Both the United States Constitution and the Texas Constitution guarantee individuals the right to assistance of counsel in a criminal prosecution. "The right to counsel requires more than the presence of a lawyer; it necessarily requires the right to effective assistance." *Lopez v. State*, 343 S.W.3d 137, 143 (Tex. Crim. App. 2011) (citing *McMann v. Richardson*, 397 U.S. 759, 771 n. 14, 90 S. Ct. 1441, 1449 (1970);

24

*Powell v. Alabama*, 287 U.S. 45, 57, 53 S. Ct. 55, 77 (1932)). Effective assistance is not errorless representation but, rather, objectively reasonable representation. *Id*. To prevail on his claim of ineffective assistance of counsel, a defendant must must show that: (1) counsel's representation fell below an objective standard of reasonableness, and (2) the deficient performance prejudiced the defense. *Id*. (repeating the test set out by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984)).

Courts of appeals must make a "strong presumption that counsel's performance fell within the wide range of reasonably professional assistance." *Robertson v. State*, 187 S.W.3d 475, 482 (Tex. Crim. App. 2006); *Martinez v. State*, 313 S.W.3d 358, 364 (Tex. App.-Houston [1st Dist.] 2009, pet. ref'd). To overcome that presumption, a defendant must show that the challenged action could not be considered sound trial strategy under the circumstance. *Martinez*, 313 S.W.3d at 364 (citing *Strickland*, 446 U.S. at 689, 104 S. Ct. at 2065). Allegations of ineffectiveness must be firmly founded in the record, which must demonstrate affirmatively the alleged ineffectiveness. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). If the record is silent on trial counsel's reasoning or strategy, a reviewing court presume that his action was strategic. *Id*. at 814. The record on direct appeal rarely provides the reviewing court an opportunity to conduct a fair evaluation of the merits of an

ineffective assistance of counsel claim. *Randon v. State*, 178 S.W.3d 95, 102 (Tex. App.-Houston [1st Dist.] 2005, no pet.). If the record does not establish that trial counsel's conduct fell below reasonable professional standards, a reviewing court is not to speculate to find trial counsel ineffective. See *Wood v. State*, 260 S.W.3d 146, 148 (Tex. App.-Houston [1st Dist.] 2008, no pet.). In the event the appellate court finds the issue is not shown on the record, the appellant may pursue the claim by way of a habeas petition. *Ex parte Brown*, 205 S.W.3d 538, 546 (Tex. Crim. App. 2006).

Improper closing arguments include references to facts not in evidence or incorrect statements of law. *Phillips v. State*, 130 S.W.3d 343, 355 (Tex. App.-Houston [14th Dist.] 2004), *aff'd*, 193 S.W.3d 904 (Tex. Crim. App. 2006). For an improper jury argument to mandate reversal, it must be extreme, violate a mandatory statute, or inject new facts into the record. *Id*.

A defendant forfeits his right to complain on appeal about an improper jury argument if he fails to object to the argument or to pursue his objection to an adverse ruling. *Threadgill v. State*, 146 S.W.3d 654, 670 (Tex. Crim. App. 2004). If a trial court sustains an objection asserting an improper jury argument, to preserve error on appeal, the complaining party must additionally request an instruction to disregard an offending argument if such an instruction could cure the prejudice. *McGinn v. State*, 961 S.W.2d 161, 165 (Tex. Crim. App. 1998). If the prejudice arising from an

26

erroneous jury argument is incurable, the complaining party must move for a mistrial. *Id*.

B. *Application*

In this case, the State argued at length that it only had to prove:

1) Appellant knowingly used the vehicle, and

2) the use was without effective consent.

The State made several statements that it did not have to show Appellant stole the vehicle. RR Vol. 4, p. 84, ll. 14-17; pp. 85-86; p. 93, ll. 18-25. Appellant's trial counsel failed to object to the argument or ask for a mistrial due to incurably prejudicial argument. By arguing it only had to show Appellant knew he was operating the vehicle, the State mis-stated the law concerning the elements of the offense. It thus led the jury to believe it could convict without first finding Appellant knew the use of the vehicle was without the effective consent of the owner. However, the complaint was not preserved for appeal, despite being clearly prejudicial argument that expanded the method by which the jury could find Appellant guilty.

This was the entire defense of the case–whether Appellant was aware the use of the vehicle was without consent. To let the State explain the elements to remove that key element of the case without objection was clearly performance below the

standard of care and cause prejudice of such a degree that confidence in the outcome of the trial is undermined. This failure was compounded by the failure in allowing the court to mis-direct the jury with a charge that included instruction on knowing the result of the conduct, an element that is not part of the offense of unauthorized use of a vehicle. As a result, Appellant was convicted by a jury that was given a confusing charge and an explanation by the State that ended the confusion by eliminating a necessary element of the offense.

Appellant was convicted on a charge that impermissibly expanded the mens rea under which he could be found guilty and after the jury had beaten into its collective skull that it did not need to find Appellant had knowledge he was using the vehicle without the owner's effective consent. Trial counsel was aware the crucial issue in the case was the lack of direct evidence of any awareness the use of the vehicle was non-consensual; however, he failed to object to the charge or to the prosecutors' argument that negated the crucial issue of the mens rea of the circumstances. There can be no conceivable trial strategy to permit the charge to expand the scope of the offense or to allow the State to argue that an essential element of the offense was not an element it needed to prove.

Appellant was so severely prejudiced by trial counsel's failure to object to the charge and the evidence that confidence in the outcome is undermined, and the

judgment should be reversed and a new trial ordered.

## Prayer

Appellant Christoper Siebert respectfully requests this Honorable Court to reverse the judgment of the court below and order an acquittal. Alternatively, Appellant respectfully requests this Honorable Court to reverse the judgment of the trial court and remand for a new trial.

Respectfully submitted,

 /s/ *Donald B. Edwards*
Donald B. Edwards
State Bar No. 06469050
Law Office of Donald B. Edwards
P.O. Box 3302
Corpus Christi, TX 78463-3302
(361) 887-7007
(361) 887-7009 (fax)
Attorney for Appellant

## Certificate of Compliance and Service

I, Donald B. Edwards, certify that this brief contains 4,789 words in those matters not exempted under Rule 9. A copy of this brief is being delivered on May 26, 2015, via copy forwarding service of the electronic filing system to Mr. Doug Norman at his email addresses of douglas.norman@nuecesco.com and douglas.norman@co.nueces.tx.us.

 /s/ *Donald B. Edwards*
Donald B. Edwards

29